UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| Plaintiff, | : | CRIMINAL ACTION NO. |
| | : | 08-cr-004 (JCH) |
| v. | : | |
| | : | |
| CHRIS LAMONT SHERMAN | : | APRIL 21, 2009 |
| Defendant. | : | |
| | : | |

**RULING RE: DEFENDANT SHERMAN'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL AND/OR MOTION FOR A NEW TRIAL (DOC. NO. 858) AND MOTION TO EXTEND TIME (DOC. NO. 884) CONCERNING THE SAME**

## I.     INTRODUCTION

On January 9, 2009, a jury found the defendant, Chris Lamont Sherman, guilty of conspiracy to possess with intent to distribute, and to distribute, fifty grams or more of cocaine base ("crack cocaine" or "crack") in violation of Sections 841(a)(1) and 846 of Title 21 of the United States Code.  Sherman is incarcerated and awaiting sentencing.

He now renews his earlier Motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(c) and, in the alternative, moves for a new trial pursuant to Fed. R. Crim. P. 33(a).  Further, in reply to the government's argument that his Rule 29/Rule 33 Motion is untimely, Sherman moves for an extension of time to file that Motion, nunc pro tunc. For the following reasons, Sherman's Motion for an Extension of Time is granted, and his Motion for Judgment of Acquittal and/or Motion for a New Trial is denied.

## II.    FACTS

A superceding indictment in this case charged Sherman and sixteen others with various drug offenses.  Specifically, Sherman was charged with conspiring with nine

1

other individuals to possess with intent to distribute, and to distribute, fifty grams or more of crack cocaine. Sherman, who was tried with co-defendant Robert Rawls, was convicted by a jury.

During the four-day trial in January 2009, the government presented evidence of a conspiracy to distribute crack in New Haven, Connecticut led by Roshaun Hoggard. At trial, the evidence concerning the conspiracy – and Sherman's role in therein – consisted of, inter alia: (1) the testimony of cooperating witness Kenneth Thames that Thames purchased crack cocaine from Hoggard on various occasions between September and November 2007; (2) intercepted telephone calls between Hoggard and Thames communicating in a code[1] which, Thames explained, indicated various quantities of crack cocaine; (3) the testimony of Officer Michael Paleski that crack cocaine, along with a pot and kitchen utensils with cocaine residue on them, were found in a safe in a residence where, the testimony asserted, Hoggard and co-conspirator Rawls lived; (4) intercepted telephone calls from which a reasonable jury could conclude that Hoggard and Sherman worked together to obtain powder cocaine (the main ingredient in crack cocaine) at the lowest possible price; (5) intercepted telephone calls from which a reasonable jury could conclude that Hoggard and Sherman referred crack cocaine customers to one another; (6) intercepted telephone calls between Hoggard and an individual in New York City – identified by the government as Genero Marte – which, a reasonable jury could infer, concerned Marte supplying Hoggard with

---

[1] Thames testified that, when making orders for drugs, he and Hoggard often used code words to indicate drug quantities. Pursuant to this code, a "Monday" meant one-eighth of one ounce of crack cocaine, also known as an "eight-ball," "Tuesday" meant two eight-balls, "Wednesday" meant three eight-balls, and "Fortune" meant four eight-balls. The government offered multiple intercepted calls between Hoggard and Thames in which they used these codes.

2

powder cocaine; (7) the testimony of Special Agent Anastas Ndrenika and Officer Kaitlin Flavin and intercepted telephone calls between Hoggard and Marte, from which a reasonable jury could infer that on the evening of November 27, 2007, Hoggard traveled to New York City to obtain powder cocaine from Marte; (8) the testimony of Officer Daniel Sacco that police seized approximately 272 grams of powder cocaine from Sherman in the early morning hours of November 28, 2007, and the testimony of Special Agent Uri Shafir, together with intercepted calls around the time of that seizure, from which a reasonable jury could conclude that Sherman had gone to New York City with Hoggard to obtain the powder cocaine that was seized; (9) intercepted telephone calls from which a reasonable jury could conclude that Hoggard and other co-conspirators were interested in, and concerned by, Sherman's arrest and the seizure of cocaine from Sherman; and (10) intercepted telephone calls from which a reasonable jury could conclude that Hoggard and co-conspirator Rawls were "hurt" by the seizure of cocaine from Sherman.

On January 8, 2009, at the end of the government's case, the court made a finding ("the Bourjaily finding") that the government had proven, by a preponderance of the evidence, that Sherman was a member of the charged conspiracy. See Bourjaily v. United States, 483 U.S. 171 (1987); United States v. Geaney, 417 F.2d 1116 (2d Cir. 1969). Following this ruling, Sherman moved for a judgment of acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure. The court denied Sherman's Motion, stating that:

> It is the court's conclusion that a reasonable jury could find defendant Sherman guilty beyond a reasonably doubt. . . . [T]here's . . . sufficient evidence from which they could conclude that . . . there was a conspiracy to

> distribute crack cocaine, and that Mr. Sherman as well as Mr. Rawls were aware of that conspiracy, which, of course, is centered around Mr. Hoggard, and that they joined in this conspiracy. With respect to Mr. Sherman, the evidence that I would look to would be . . . calls that suggest [Sherman and Hoggard] look to each other when one of them ran out [of drugs]. [A]lso there's a number of calls [in] which they are discussing what prices are available . . . those calls could be read to be [Sherman and Hoggard] working together and both trying to get the price down to a certain level.

Trial Transcript ("Tr.") at 544. The court also noted that a reasonable jury could find that Sherman's statement to Hoggard – during a conversation in which a reasonable jury could find that the men were talking about the prices of powder cocaine – that "we all together like," meant that Sherman and Hoggard were members of the same conspiracy. Tr. 545.

On January 9, 2009, the jury found Sherman guilty of conspiracy to possess with intent to distribute, and to distribute, fifty grams or more of crack cocaine. Sherman now renews his Rule 29 motion to set aside the jury's verdict and enter a judgment of acquittal, and, in the alternative, moves for a new trial pursuant to Rule 33(a).

### III. STANDARD OF REVIEW

#### A. Motion for Judgment of Acquittal

Rule 29(a) provides that district courts "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Rules 29(b) and (c) permit a court to reserve the decision on the motion until after the jury returns a verdict. "A defendant challenging the sufficiency of the evidence that was the basis of his conviction at trial bears a 'heavy burden.'" United States v. Hawkins, 547 F.3d 66, 70 (2d Cir. 2008) (quoting United States v. Parkes, 497 F.3d 220, 225 (2d Cir. 2007)). In deciding whether to grant a motion pursuant to Rule 29,

the court should "view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." Hawkins, 547 F.3d at 70. A jury verdict shall be sustained "so long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting Parkes, 497 F.3d at 225-6) (internal quotation marks omitted). "[I]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." United States v. Glenn, 312 F.3d 58, 70 (2d Cir. 2002) (internal quotation marks omitted).

      B.     Motion for a New Trial

Rule 33(a) allows a district court to vacate "any judgment and grant a new trial if the interest of justice so requires." The rule gives the court "broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." United States v. Ferguson, 246 F.3d 129, 133 (2d Cir. 2001) (internal citation omitted). The court, when examining the entire case, must make an objective evaluation of the evidence and determine whether "'competent, satisfactory and sufficient evidence' in the trial record" supports the jury's verdict. Id. Unlike in a Rule 29 motion, where the court must draw every inference in favor of the government, in a Rule 33 motion the court is entitled to "weigh the evidence and in doing so evaluate for itself the credibility of the witnesses." United States v. Robinson, 430 F.3d 537, 543 (2d Cir. 2005) (quoting United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992)). However, it may not "wholly usurp the jury's role." Id. Although a trial court has substantially more discretion

5

to grant a new trial under Rule 33 than it does to grant a motion for acquittal under Rule 29, the authority should be exercised "sparingly" and only in "the most extraordinary circumstances." Sanchez, 969 F.2d at 1414. "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." Ferguson, 246 F.3d at 133. A manifest injustice is found where the court has "a real concern that an innocent person may have been convicted." Parkes, 497 F.3d at 232.

## IV. DISCUSSION

### A. Timeliness

Under Fed. R. Crim. P. 29(c)(1), "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 7 days after a guilty verdict or after the court discharges the jury, whichever is later." Similarly, Fed. R. Crim. P. 33(b)(2) states, "any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty."

In the present case, the jury returned a guilty verdict as to Sherman on January 9, 2009, and was discharged the same day. See Tr. 710-714. Thus, under the rules for computing time set out in Fed. R. Crim. P. 45(a), Sherman's Motion would be timely if filed by January 20, 2009.[2] Sherman's Motion, however, was filed on March 19, 2009, nearly two months overdue. See Motion (Doc. No. 858).

---

[2] Sherman's Motion would also have been timely if, within the seven day period, Sherman moved for an extension of time to file his Motion, and the court granted such extension of time. See Fed. R. Crim. P. 45(b)(1)(A) ("When an act must or may be done within a specified period, the court on its own may extend the time, or for good cause may do so on a party's motion made before the originally prescribed or previously extended time expires"); Advisory Committee's Note accompanying Rule 29 ("The court may still set another time for the defendant to make or renew the motion, if it does so within the 7-day period"). In this case, however, Sherman did not move for an extension of time within the seven-day period, and the court did not extend the time sua sponte.

6

Sherman argues that, despite his failure to file the present Motion within the seven-day period required by the Federal Rules of Criminal Procedure, the court should consider the merits of his Motion because, under Rule 45(b)(1)(B), "the court on its own may extend the time, or for good cause may do so on a party's motion made after the time expires, if the party failed to act because of excusable neglect."  Fed. R. Crim. P. 45(b)(1)(B); see United States v. Owen, 559 F.3d 82 (2d Cir. 2009) (holding that, "[a]lthough Rule 33 is an inflexible claim-processing rule, it is not jurisdictional and is therefore subject to the time-modification provisions of Rule 45(b) of the Federal Rules of Criminal Procedure") (internal quotations omitted).  Specifically, Sherman notes that his counsel orally moved for judgment of acquittal on January 9, 2009, and mistakenly believed that he could "augment" that oral motion with a subsequent written motion.  Supplement to Motion for Judgment of Acquittal And/Or New Trial (Doc. No. 884) at 1.

It is the court's conclusion that, in this case, counsel's neglect borders on the inexcusable.  Rules 29 and 33 clearly state that motions must be brought within a seven-day period, and make no exception for the "augment" of a prior oral motion.  Nevertheless, the court accepts counsel's representation that he made a mistake in good faith, and therefore finds that counsel's neglect is excusable.  Thus, pursuant to Fed. R. Crim. P. 45(b)(1)(B), the court grants Sherman's Motion for an extension of time nunc pro tunc to file his Motion for Judgment of Acquittal And/Or Motion for a New Trial.

B.      Motion for Judgment of Acquittal

Sherman argues that the evidence adduced at his trial is insufficient to sustain his conviction because "[t]he prosecution failed to prove that [he] was a crack co-conspirator with Mr. Hoggard," and further that, "at most, this case reveals that Mr.

Sherman may have been involved in a buyer-seller relationship with Mr. Hoggard which is insufficient to establish a conspiracy . . . ." Memorandum in Support of Motion for Judgment of Acquittal And/Or for New Trial (Doc. No. 859) ("Mem. in Supp."), at 2. The court disagrees.

To begin, it bears noting that Sherman does not dispute the existence of a conspiracy to possess with intent to distribute, and to distribute, crack cocaine in New Haven, Connecticut.[3] Nor does Sherman dispute that Hoggard led this conspiracy. Rather, Sherman asserts only that the government did not adduce sufficient evidence at trial to tie him to the conspiracy. This argument is without merit.

Perhaps the evidence most harmful to Sherman's argument is the circumstances of his arrest, recounted at trial by Officer Kaitlin Flavin, Special Agent Anastas Ndrenika, and Officer Daniel Sacco. See id. at 299-331. On the second day of trial, Special Agent Ndrenika testified that, during the afternoon and early evening of November 27, 2007, law enforcement personnel intercepted calls between Hoggard and other individuals which led them to believe that Hoggard would be buying cocaine from a source in New York City that evening. See id. at 300-306. In response to these calls, law enforcement personnel decided to surveil Hoggard that evening.

Special Agent Ndrenika set up surveillance at what he believed to be the arranged meeting spot for the transaction in New York, where, at approximately 10:30 p.m., he observed a silver Chrysler Seabring bearing Connecticut registration 658-

---

[3] The existence of this conspiracy was established at trial through the testimony of cooperating witness Thames, the intercepted calls between Hoggard and numerous individuals – including, inter alia, Thames and co-defendant Torrance McCown – and the testimony of various law enforcement witnesses concerning surveillance and drug seizures in New Haven.

WMU which law enforcement personnel had previously identified as being associated with Hoggard.  See id. at 308-310.  Shortly thereafter, Ndrenika observed Hoggard and another individual enter the silver Seabring, which departed the area at approximately 11:05 p.m.  See id. at 311-312.  Ndrenika and other law enforcement personnel then followed the silver Seabring from New York City back to New Haven.  See id. at 313.

Officer Kaitlin Flavin took the stand after Special Agent Ndrenika and testified that, on the night of November 27, 2007, she was assigned to the team surveilling Hoggard.  Specifically, Flavin testified that, after observing Hoggard speaking on a cell phone near the location in New York in which the team suspected he was buying powder cocaine, she was sent back to Connecticut to reach New Haven before the silver Seabring.  See id. at 322-324.  Upon reaching New Haven, Flavin established surveillance at Hoggard's residence at 397 Edgewood Avenue at around 12:15 or 12:20 a.m.  See id.  Within minutes, Flavin saw the silver Seabring, which other law enforcement officials had observed earlier in New York City, stop near 397 Edgewood Avenue.  See id. at 325.  She then observed Hoggard exit the Seabring and enter 397 Edgewood Avenue, after which the Seabring continued driving.  See id. At 326-327.

Subsequently, Officer Daniel Sacco testified that, after observing the silver Chrysler Seabring near 397 Edgewood Avenue, he and a fellow officer conducted a motor vehicle stop of the Seabring on Elm Street in New Haven.  See Tr. 344-345. When the Seabring pulled over in response to Officer Sacco's lights and sirens, the doors immediately opened and the passenger fled into the backyard of a nearby residence.  See id. at 345.  Officer Sacco chased the fleeing passenger and saw him throw a black bag onto the roof of a nearby garage.  See id. at Tr. 345-346.  With the

9

assistance of other police officers, Officer Sacco caught the fleeing passenger and retrieved the black bag from the roof of the garage. See id. at 346-348. The passenger was later identified as Sherman, and the black bag was found to contain 272 grams of powder cocaine. See id. at 348-354. Given this evidence, as well as the testimony of Special Agent Ndrenika, Officer Flavin, and Officer Sacco, a reasonable jury could find that, on the night of November 27, 2007, Sherman and Hoggard went to New York together to obtain a large amount of powder cocaine.

The government, however, did not rely solely on the events of November 27, 2007, to establish Sherman's participation in the Hoggard conspiracy. Rather, it introduced evidence of intercepted telephone calls between Sherman and Hoggard, as well as calls between Hoggard and other co-conspirators discussing Sherman, both of which could be used by a reasonable jury to conclude that Sherman and Hoggard were co-conspirators.

The evidence of intercepted calls between Sherman and Hoggard included a number of calls played for the jury at trial in which, the government argued, the men discussed matters relating to the charged conspiracy. In Government Exhibit 87, for example, a call in which a reasonable jury could find that Hoggard and Sherman were discussing the need to obtain powder cocaine at the lowest price possible, Sherman says to Hoggard, "we ain't playin no games man, you know what I mean, we all together like." In light of the evidence mentioned above, a reasonable jury could conclude that this statement tends to prove that Hoggard and Sherman were members of the same conspiracy to distribute crack cocaine in New Haven.

Further, in Government Exhibits 66 and 67 – calls intercepted after Sherman's

arrest – Hoggard and co-conspirator Rawls discuss the seizure of the 272 grams of powder cocaine from Sherman. Hoggard and Rawls commiserate over the "hurt" the seizure has caused and note various mistakes made by Sherman and others in the events that led to the seizure. A reasonable jury could find that the conversations in Government Exhibits 66 and 67 were the discussions of co-conspirators regarding the circumstances and consequences of a business loss involving another co-conspirator, i.e., Sherman.

Thus, given that a rational jury could have convicted Sherman on the evidence introduced by the government at trial – namely, the cocaine seized from Sherman, the circumstances surrounding that seizure, the intercepted calls between Hoggard and Sherman, and the intercepted calls between Hoggard and other co-conspirators discussing Sherman – the court finds that Sherman has not met his burden of establishing that there was insufficient evidence to sustain his conviction. Accordingly, the court denies Sherman's Renewed Motion for Judgment of Acquittal pursuant to Fed. R. Crim. P. 29(c).

    C.    <u>Motion for a New Trial</u>

Sherman argues that he was prejudiced by the playing of over 100 telephone phone calls involving Hoggard and other co-conspirators "that had nothing to do with Mr. Sherman." Mem. in Supp. at 2. This argument is without merit. In order to establish the elements of the conspiracy charge against Sherman, the government had to prove, beyond a reasonable doubt, the existence of a conspiracy to distribute crack cocaine in New Haven. The government did this in part by playing numerous intercepted calls involving the alleged leader of the conspiracy (i.e., Hoggard) and his

11

alleged co-conspirators (e.g., Thames, Marte, McCown, Rawls, and Sherman) which, the government alleged, were in furtherance of the conspiracy. This was neither inappropriate nor improper, and does not require a new trial.

Sherman further argues that a new trial is required because he was prejudiced by the admission of certain out-of-court statements of alleged co-conspirators. Specifically, Sherman argues that the alleged co-conspirators' out-of-court statements were admitted erroneously because "the prosecution failed by a preponderance of the evidence both as to the conspiracy and that Mr. Sherman and the declarant were members of this conspiracy." Mem. in Supp. at 3; see United States v. Geaney, 417 F.2d 1116 (2d Cir. 1969). As discussed above, however, the government introduced sufficient evidence for a reasonable jury to find: (1) that there existed a conspiracy to distribute crack cocaine led by Hoggard; (2) that Sherman and the other individuals identified on the calls were members of the conspiracy; and (3) that the conversations on the intercepted calls were in furtherance of the conspiracy. As a result, the admission of the statements of the alleged co-conspirators was not erroneous and does not warrant a new trial. See F. R. E. 801(d)(2)(E) ("A statement is not hearsay if the statement is offered against a party and is a statement by a coconspirator of a party during the course and in furtherance of the conspiracy").

Consequently, although the court has more discretion to grant a Rule 33 motion than a Rule 29 motion, the court finds that there are no "extraordinary circumstances," Ferguson, 246 F.3d at 133, present in this case to warrant setting aside the jury's verdict and ordering a new trial. In examining the entire case, as it did in ruling on the Rule 29 motion, the court finds that there is sufficient evidence in the trial record to

support the jury's verdict and that the jury's verdict did not result in a "manifest injustice." Id. Therefore, the court denies Sherman's Motion for a New Trial.

## V. CONCLUSION

For the foregoing reasons, Sherman's Motion for Extension of Time nunc pro tunc (Doc. No. 884) is **GRANTED**, and his Renewed Motion for Judgment of Acquittal pursuant to Fed. R. Crim. P. 29(c) and/or Motion for a New Trial pursuant to Fed. R. Crim. P. 33(a), (Doc. No. 858) is **DENIED**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 21st day of April, 2009.

                                        /s/ Janet C. Hall
                                        Janet C. Hall
                                        United States District Judge